UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| **TONY P. WARZECHA,** | ) | Case No. 6:11-CV-06221-SI |
| Plaintiff, | ) | |
| v. | ) | **OPINION AND ORDER** |
| **KEMPER SPORTS MANAGEMENT INC., dba BANDON DUNES,** | ) | |
| Defendant. | ) | |

**SIMON, District Judge.**

Tony Warzecha has sued his former employer, Kemper Sports Management, Inc. (dba Bandon Dunes) ("Kemper") for sexual harassment, disability harassment, and retaliation in violation of state and federal law. For the reasons that follow, the court grants Kemper's motion for summary judgment (Dkt. 24) on all grounds and dismisses this case with prejudice.

## BACKGROUND

On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

Mr. Warzecha was employed by Kemper as a groundskeeper for nearly two years, from April 2008 until March 2010, when he was terminated for cause. During most of this period, Mr. Warzecha had a volatile relationship with one of his co-workers, Matthew Anderson. Mr. Warzecha's harassment claims are based on five categories of comments or actions allegedly made or takenby Mr. Anderson over the course of Mr. Warzecha's employment. *See* Pl.'s Resp. Mot. Summ. J. at 2.

First, in the summer of 2008, someone repeatedly wrote in the dirt on Mr. Warzecha's car door, "Tony likes little boys." Pl.'s Dep. at 120. Mr. Warzecha believes Mr. Anderson was responsible for this statement, which occurred three times within a two-week period. *Id.* Second, in the summer of 2008 or 2009, Mr. Anderson asked Mr. Warzecha four or five times over a two-month period, "Are you going to go home and f*** your Chihuahuas?" *Id.* at 124.[1] Third, over the course of about a week in January or February 2010, pictures of bare-chested men were left on Mr. Warzecha's work locker on three occasions; the third photo was accompanied by a pink, glittery belt. *Id.* at 153-56, 159, 161, 165. Mr. Warzecha saw Mr. Anderson put one of the photos on his locker. *Id.* at 154, 163. The photos appeared over the course of about a week. Fourth, throughout the course of Mr. Warzecha's employment, Mr. Anderson mimicked Mr. Warzecha's stutter approximately 40-50 times. *Id.* at 118. Fifth, Mr. Anderson called Mr. Warzecha "fat" and "worthless" and used other insulting epithets on multiple occasions. Strong Dep. at 50, 61.

Mr. Warzecha reported some (but not all) of these incidents to his immediate supervisor, Clinton "CJ" Kreuscher. Pl.'s Dep. at 141-43, 163-64. In February 2010, he first told

---

[1] The parties dispute the year these comments were made, but for the reasons discussed below, the date the comments were made does not alter the outcome of this case.

OPINION AND ORDER, Page 2

Mr. Kreuscher that he considered Mr. Anderson's conduct to be sexually harassing, after the second photo of a bare-chested man appeared on Mr. Warzecha's locker. *Id.* at 162-163, 167-168.

By that time, Mr. Kreuscher had already issued Mr. Warzecha several verbal and written warnings for poor work performance. Mr. Warzecha received his first written warning in June 2009 for "[r]epeated abandonment of job post" and "[d]isregard for fellow employees['] equipment (Littering)." Guest Decl., Dkt. 32, Ex. 28. Mr. Warzecha acknowledges that, prior to this written warning, he had already received similar verbal warnings on four or five occasions. Pl.'s Dep. at 145-146. The written warning was prompted by an incident where Mr. Warzecha left a piece of motorized equipment running while unattended. *Id.* at 146.

On January 30, 2010, Mr. Warzecha received a second written warning for "[r]epeatedly talking on cell phone (personal) during work hours," which Mr. Warzecha acknowledges was true; "[i]nability to work with co-workers"; "[u]nsatisfactory work[,] [j]ob assignments are rarely completed in a timely manner"; and "[m]isuse of equipment," even though Mr. Warzecha "has been trained on all equipment." Guest Decl., Dkt. 32, Ex. 27; Pl.'s Dep. at 169-170. This written warning also noted that "[f]urther violations will result in termination of employment." Guest Decl., Dkt. 32, Ex. 27.

On March 5, 2010, another groundskeeper, not Mr. Anderson, found Mr. Warzecha's motorized equipment left running and unattended for fifteen or twenty minutes. Brittain Decl., Dkt. 29, ¶ 8. He reported the incident to Mr. Kreuscher. *Id.* at ¶ 9. When Mr. Kreuscher went to investigate, he also found the equipment left running and unattended. Kreuscher Dep. at 54. Mr. Kreuscher discussed the matter with his supervisor, Ken Nice, who reviewed

Mr. Warzecha's file before approving Mr. Kreuscher's recommendation that Mr. Warzecha be fired. Nice Decl., Dkt. 27, at ¶ 6. The final written notice that accompanied Mr. Warzecha's termination stated that he "[r]epeatedly abadon[ed] job post," "left equipment running unattended," and "had multiple undocumented verbal warnings and documented verbal and written warnings." Guest Decl., Dkt. 32, Ex. 10. Mr. Warzecha acknowledges that these statements are accurate. Pl.'s Dep. at 208-09.

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine dispute of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine dispute for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of plaintiff's positions [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

# DISCUSSION

## I. Claims I and II: Same-Sex Harassment and Hostile Work Environment

Title VII of the Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex …." 42 U.S.C. § 2000e-2(a)(1). Oregon law prohibits the same conduct, and the parties agree that the state statute is construed similarly to Title VII. *See* ORS 659A.030; *Campbell v. Knife River Corp. – NW*, 783 F. Supp. 2d 1137 (D. Or. 2011).

Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 73, 78 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation mark omitted). Such a hostile working environment can constitute a violation of Title VII even if the plaintiff and his harasser are of the same sex. *Id.* at 79. Discriminatory conduct "need not be motivated by sexual desire to support an inference of discrimination on the basis of sex"; nonetheless, something more than mere "sexual content or connotations" is required to turn verbal or physical harassment into *discriminatory* harassment that violates Title VII. *Id.* at 80.

To establish discriminatory harassment, whether same-sex or otherwise, a plaintiff must demonstrate that the workplace environment is both objectively and subjectively offensive; that a reasonable person in the plaintiff's position would find the environment hostile or abusive; and that the plaintiff in fact did perceive the environment to be hostile or abusive. *Faragher v. City of*

*Boca Raton*, 524 U.S. 775, 787 (1998); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871-72 (9th Cir. 2001). For purposes of this motion, the court accepts that Mr. Warzecha subjectively perceived the working environment as offensive and abusive; this case turns instead on whether Mr. Anderson's alleged conduct created an *objectively* hostile work environment.

Relevant to this inquiry is the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nichols*, 256 F.3d at 872 (quoting *Harris*, 510 U.S. at 23) (internal quotation marks omitted). "The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'" *Id.* (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)). The workplace context is also important. Judges and juries should use "[c]ommon sense, and an appropriate sensitivity to social context, … to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find *severely hostile or abusive*." *Oncale*, 523 U.S. at 82 (emphasis added); *see also Nichols*, 256 F.3d at 872 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (quoting *Faragher*, 524 U.S. at 788) (alterations in original)).

Accepting all of Mr. Warzecha's allegations as true, the isolated teasing he describes was not sufficiently pervasive or severe to constitute discrimination that altered the conditions or terms of his employment. According to Mr. Warzecha, over an eighteen-month period a co-worker implied on three occasions that Mr. Warzecha had sex with boys, on four or five occasions that he had sex with his dogs, and on three occasions that he liked men. These

comments were not accompanied by any physical harassment or intimidation; they were isolated in time; they were not objectively severe; and there is no evidence that they significantly interfered with Mr. Warzecha's ability to perform his job.

These facts are not comparable to those in *Oncale*, for example, where the plaintiff was "forcibly subjected to sex-related, humiliating actions … in the presence of the rest of the crew" and was "assaulted … in a sexual manner" and "threatened … with rape." 523 U.S. at 77. Nor is this case akin to *Nichols*, where the plaintiff "was subjected to a relentless campaign of insults, name-calling, and vulgarities," and was "mocked" and "taunted" "at least once a week and often several times a day." 256 F.3d at 870. A more analogous case is *Hubbard v. Bimbo Bakeries USA, Inc.*, 2006 WL 2863222 (D. Or. Oct. 4, 2006), *aff'd* 270 F. App'x 607 (9th Cir. 2008). The plaintiff in *Hubbard* claimed his male colleagues were sexually harassing him because they made crass sexual comments and gestures about homosexual sex. *Id.* at * 12. The court acknowledged these were objectively offensive comments and actions, but held that they were not sufficiently severe or pervasive to amount to a hostile work environment. The comments were isolated, and they were not accompanied by any physical or threatening actions or conduct that objectively humiliated the plaintiff. *Id.* If anything, the conduct alleged by Mr. Warzecha is even less severe than that described in *Hubbard*.

As a matter of law, the conduct alleged by Mr. Warzecha was not sufficiently severe or pervasive to create an objectively hostile or abusive environment. The court therefore grants Kemper's motion for summary judgment on Claims I and II.

## II. Claims III and IV: Disability Harassment and Hostile Work Environment

The Americans with Disabilities Act ("ADA") prohibits discrimination "against a qualified individual on the basis of disability in regard to … the hiring, advancement, or discharge of employees, … and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Similarly, under ORS 659A.112(1), "[i]t is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment on the basis of disability." This statute "shall be construed to the extent possible in a manner that is consistent with any similar provisions" of the ADA. ORS 659A.139.[2]

For purposes of this motion, the court assumes without deciding that federal and state law recognize a cause of action for disability discrimination based on a hostile work environment, a question not yet clearly decided by the Ninth Circuit. *See, e.g.*, *Lanman v. Johnson Cnty.*, 393 F.3d 1151, 1151 (10th Cir. 2004) (recognizing such a cause of action under the ADA); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 719 (8th Cir. 2003) (same); *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233 (5th Cir. 2001) (same); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) (same); *Walton v. Mental Health Ass'n*, 168 F.3d 661, 666-67 (3d Cir. 1999) (assuming without deciding that such a cause of action exists); *Wheeler v. Marathon Printing, Inc.*, 157 Or. App. 290, 299-303, 974 P.2d 207, 212-14 (Or. App. 1998) (recognizing such a cause of action under an earlier version of ORS 659A.112).

---

[2] In his complaint, Mr. Warzecha mistakenly alleged a violation of ORS 659A.030 instead of ORS 659A.112. He has requested leave to amend his complaint, but for the reasons that follow, leave to amend would be futile.

OPINION AND ORDER, Page 8

### A. Failure To Exhaust Federal Claim

To bring a cause of action under the ADA, a plaintiff must first exhaust her administrative remedies by filing a timely charge with the EEOC or the appropriate state agency. 42 U.S.C. § 12117(a) (adopting Title VII remedies and procedures for implementing the ADA); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (describing exhaustion requirements under Title VII). This court only has subject matter jurisdiction "over all allegations of discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" *B.K.B.*, 276 F.3d at 1100 (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)) (emphasis in original). While the EEOC charge should be liberally construed, the claims in the civil complaint must at least be "like or reasonably related to the allegations contained in the EEOC charge" and consistent with plaintiff's original theory of the case. *Id.* (quoting *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989)) (quotation marks omitted).

In his EEOC charge, Mr. Warzecha marked only the box indicating that he complained of discrimination under Title VII; the ADA box was left blank. Similarly, under "Circumstances of alleged discrimination," Mr. Warzecha only checked "sex," leaving all others – including "disability" – blank. Guest Decl., Dkt. 32, Ex. 12. In his state BOLI complaint, Mr. Warzecha alleged "unlawful employment discrimination based on sex/gender in that I was subjected to a sexually hostile environment and I was terminated."  Although there are several additional allegations related to sexual harassment, no mention is made either of a disability or harassment due to that disability. Nor can the court conclude that Mr. Warzecha's disability harassment

OPINION AND ORDER, Page 9

claim is "like or reasonably related" to the sexual harassment allegations in his EEOC charge and BOLI complaint.

Mr. Warzecha acknowledges that his BOLI complaint did not include a disability claim, but he argues that it should not matter because BOLI mentioned in its "Notice of Substantial Evidence Determination" that Mr. Warzecha had a speech impediment and that Mr. Anderson mimicked it on many occasions. *See* Pl.'s Resp., Dkt. 34, Ex. 13 at ¶ 10. That was not a distinct allegation, however, but part of the Notice's description of Mr. Warzecha's poor relationship with Mr. Anderson. There is nothing in the Notice linking this conduct to an allegation of discriminatory employment practices related to Mr. Warzecha's alleged disability.

Mr. Warzecha also argues that he intended to raise disability harassment in his BOLI complaint and does not know why it was not included in the final version. The first draft of his BOLI complaint did state "I allege unlawful employment discrimination based on disability and sex/gender in that I was subjected to a sexually hostile work environment," and "I have a speech impairment and I was sexually harassed." *See* Pl.'s Resp., Dkt. 34, Ex. 12 at 9. On this initial draft, someone struck out the words "disability" and "sex/gender" in the first sentence and the entirety of the latter sentence. *See id.* Mr. Warzecha has not identified whose handwriting this is or explained why, if this was contrary to his wishes, he did not intervene when several later versions of his complaint omitted all mention of his disabilities.

Mr. Warzecha is correct that under Ninth Circuit precedent, a court may equitably excuse a plaintiff's failure to exhaust administrative remedies in an employment discrimination case where that failure was "due to agency negligence." *See B.K.B.*, 276 F.3d at 1101-02; *see also id.* at 1102 ("If the [EEOC] charge itself is deficient in recording [the plaintiff's] theory of the case

due to the negligence of an agency representative who completes the charge form, then the plaintiff may present her pre-complaint questionnaire as evidence that her claim for relief was properly exhausted."); *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 387 (9th Cir. 1990) ("[W]e hold that equitable considerations may excuse a claimant's noncompliance with the scope requirement, and resulting failure to exhaust administrative remedies, when the EEOC improperly refuses to amend the claimant's timely EEOC charge."). "The equities favor a discrimination plaintiff who (1) diligently pursued his claim; (2) was misinformed or misled by the administrative agency responsible for processing his charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies; and (4) was acting pro se at the time." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

Unlike the plaintiffs in *B.K.B.* and *Albano*, however, Mr. Warzecha has not proffered any evidence of how he diligently pursued his disability harassment claim or how the agency was negligent in omitting references to his disability in his BOLI complaint. In *B.K.B.*, the plaintiff submitted an affidavit from an agency official suggesting that the failure to exhaust administrative remedies was not the plaintiff's fault; also, the plaintiff had checked the appropriate boxes on her charge form. *See* 276 F.3d at 1102-03. In *Albano*, the plaintiff submitted a "detailed declaration," describing how he had spoken with the EEOC at least fourteen times; how the EEOC had assured the plaintiff at least three times that the EEOC charge encompassed the disputed claim; and how the EEOC had refused his efforts to amend the EEOC charge. 912 F.2d at 388. In contrast, Mr. Warzecha has only submitted the original draft of his BOLI complaint without further explanation and a declaration that states, "I told BOLI that I was

discriminated against for my speech impediment. I do not know why that claim was not included in the final complaint." *See* Pl.'s Resp., Dkt. 34, Ex. 1 at ¶ 19. This statement by itself does not demonstrate how Mr. Warzecha *diligently* pursued this claim but was ultimately prevented from doing by an error on the part of the agency. Based on this record, the court declines to exercise its equitable powers to excuse Mr. Warzecha's failure to exhaust administrative remedies for his disability harassment claim.

### B. Statute of Limitations Bars State-Law Claim

Mr. Warzecha's state-law claim is similarly barred by the statute of limitations. Under Oregon law, a claimant must either file a BOLI complaint or a civil suit alleging an ORS 659A.112 violation within one year of the unlawful employment practice. ORS 659A.820; ORS 659A.875(A); ORS 659A.885. Because Mr. Warzecha did not include allegations of disability harassment in his BOLI complaint, and because he filed his civil suit fourteen months after he was fired, his disability harassment claim is time-barred.

### C. Prima Facie Case

Even if Mr. Warzecha's disability harassment claims were not barred by the exhaustion requirement and the statute of limitations, Mr. Warzecha has not alleged facts sufficient to establish a prima facie case of harassment. The only harassment Mr. Warzecha has alleged is the occasional mimic of his stutter.[3] No jury reasonably could find that Mr. Anderson's alleged conduct was so severe or pervasive that it altered the terms and conditions of Mr. Warzecha's employment. The court thus grants summary judgment to Kemper on Claims III and IV without reaching Kemper's additional arguments.

---

[3] At oral argument, Mr. Warzecha conceded that there is no evidence that he was harassed due to his alleged learning disability.

### III.    Claim V: Retaliation Related to Sexual Harassment

Retaliation claims brought under ORS 659A.030 and those brought under Title VII are analyzed in the same manner, including application of the burden-shifting framework of *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973). *Dawson v. Entek Int'l*, 630 F.3d 928, 935 (9th Cir. 2011).

> To establish a prima facie case of retaliation, a plaintiff must prove (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. ... Once established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation.

*Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) (citations omitted). Mr. Warzecha's complaint to Mr. Kreuscher in February 2010 that he believed the photos left on his locker amounted to sexual harassment could constitute protected activity, and his termination a month later is an adverse employment action. Further, temporal proximity between a protected activity and an adverse employment action may be circumstantial evidence of the requisite causal connection, particularly at the summary judgment stage, when all inferences must be drawn in the nonmovant's favor. *See Dawson*, 630 F.3d at 937.

Kemper, however, has set forth a legitimate, non-retaliatory reason for the adverse employment action. Well before Mr. Warzecha's oral complaint of sexual harassment to Mr. Kreuscher, Mr. Warzecha had already received multiple verbal warnings and two written warnings. *See* Pl.'s Dep. 167-68, 175 (stating that second written warning was received before Mr. Warzecha complained to Mr. Kreuscher about sexual harassment and acknowledging that this warning could therefore not have been retaliation for Mr. Warzecha's complaint). Notably, some of these warnings related to the same type of conduct—leaving motorized equipment

OPINION AND ORDER, Page 13

running while unattended—for which Mr. Warzecha was ultimately terminated in March 2010. There were at least two witnesses to the conduct that led to Mr. Warzecha's termination, and the ultimate decision to fire Mr. Warzecha was made by Mr. Nice, who did not know at the time of his decision about the locker incidents or Mr. Warzecha's complaint to Mr. Kreuscher that he was being sexually harassed. Nice Decl., Dkt. 27, at ¶¶ 6-7. Mr. Warzecha has not proffered any evidence suggesting that these documented incidents are merely pretext for retaliating against him for complaining to Mr. Kreuscher that he was being sexually harassed.

As a matter of law, Mr. Warzecha could not establish on these facts that he was retaliated against for opposing discriminatory employment practices in violation of Title VII or Oregon law. The court therefore grants summary judgment to Kemper on Claim V.

## IV.    Claim VI: Retaliation Related to Disability

Mr. Warzecha alleges that Kemper retaliated against him due to his good faith opposition to employment practices that violated the ADA.[4] The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Mr. Warzecha has not identified what good faith opposition he engaged in while he was employed by Kemper. He does not allege, for example, that he ever complained to Kemper during his employment that he was being harassed due to his disability. Without

---

[4] Mr. Warzecha also alleges in Claim VI that he was retaliated against because of his opposition to employment practices that violated Title VII, even though he headed Claim VI as "Retaliation (Speech Disability)." The court considered retaliation under Title VII in conjunction with Claim V and determined that leave to amend the complaint to clarify which law applies to which claim would be futile.

OPINION AND ORDER, Page 14

Mr. Warzecha's opposition to an employment practice, there was nothing against which Kemper could retaliate. The court therefore grants Kemper's motion for summary judgment on Claim VI.

## CONCLUSION

For the foregoing reasons, the court GRANTS Kemper's Motion for Summary Judgment (Dkt. 24) and DISMISSES this case with prejudice.

Dated this 25th day of June, 2012.

    /s/ Michael H. Simon
Michael H. Simon
United States District Judge